# IN THE

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| **Jessica Ploof,** an individual**,** | Ninth Circuit Case No. 22-15061 |
| Plaintiff-Appellant, | D.C. No. CV-21-00853-PHX-JJT<br>U.S. District Court for Arizona,<br>Phoenix |
| vs. | |
| **State of Arizona,** a government entity, *et al.* | |
| Defendants-Appellees. | |

# APPELLANT'S OPENING BRIEF

Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Sandra T. Daussin (AZ Bar #037274)
GILLESPIE, SHIELDS, GOLDFARB,
& TAYLOR
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
mailroom@gillaw.com

*Attorneys for Plaintiff-Appellant*

## TABLE OF CONTENTS

Introduction ................................................................................................1

Jurisdictional Statement ...........................................................................2

Statement of Issues....................................................................................3

Statement of the Case and Factual Background ......................................3

   1.  Background .......................................................................................3

   2.  DCS investigates the tips ...............................................................4

   3.  DCS removes H.P. from Jessica ....................................................5

   4.  Jessica participated in all services required by DCS ....................6

   5.  Defendant Thal's tainted evaluation and report of Brendi Ploof..................7

   6.  Jessica Ploof files a civil rights action against various employees or agents of the Arizona Department of Child Safety.......................................9

Summary of Argument .............................................................................11

Discussion ................................................................................................11

   A.  The Defendant failed to prove that the affirmative defense of the statute of limitations applied from the face of Plaintiff's complaint..........11

      1.  Standard of Review.............................................................11

      2.  The statute of limitations for section 1983 actions, generally.............11

      3.  The statute of limitations is an affirmative defense, and a plaintiff has no obligation to plead facts relevant to this defense; only if the accrual date and untimeliness is clear from the face of the complaint may the complaint be dismissed on timeliness grounds.......12

## TABLE OF CONTENTS

Conclusion ...................................................................................................18

Statement of Related Cases........................................................................19

# TABLE OF AUTHORITIES

**Cases**:

*ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999 (9th Cir. 2014) .......................11

*Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891 (E.D. Cal. 2017) ....................1, 11, 13

*Bradford v. Scherschligt*, 803 F.3d 382 (9th Cir. 2015) ...........................................15

*Jessica P. v. Dep't of Child Safety, H.P.*, 249 Ariz. 461 (App. 2020), *opinion vacated in part Jessica P. v. DCS/H.P.*, CV-20-0241-PR, 2020 WL 8766053 (Ariz. Dec. 15, 2020) ...................................................................................................16

*Lesher v. City of Anderson*, 221CV00386WBSDMC, 2021 WL 2682161 (E.D. Cal. June 30, 2021) ............................................................................................................13

*Lukovsky v. City & County of San Francisco*, 535 F.3d 1044 (9th Cir. 2008) ........14

*Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185 (9th Cir. 2018) .............................1, 13

*Rabago v. Deutsche Bank Nat. Tr. Co.*, 5:10-CV-01917-JST, 2011 WL 2173811 (C.D. Cal. June 1, 2011) ........................................................................................13

*Scott v. Kuhlmann*, 746 F.2d 1377 (9th Cir. 1984) ..................................................13

*Tovar v. U.S.P.S.*, 3 F.3d 1271 (9th Cir. 1993) ....................................................1, 13

*TwoRivers v. Lewis*, 174 F.3d 987 (9th Cir. 1999) ..................................................12

*United States v. McGee*, 993 F.2d 184 (9th Cir. 1993) ..............................................1

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966 (9th Cir. 2019) ........................................................................................................1, 13

*Wallace v. Kato*, 549 U.S. 384 (2007) ....................................................................12

*Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), *overruled on other grounds*, *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) ............................................. 1, 12-13

# TABLE OF AUTHORITIES

**Statutes & Rules:**

28 U.S.C. § 1291 ...........................................................................3

28 U.S.C. § 1331 ...........................................................................3

Arizona Revised Statutes § 12-542 ...........................................12

**Secondary Sources:**

C. Wright & A. Miller, Federal Practice and Procedure, § 1277 ............................13

## Introduction

Plaintiff Jessica Ploof brings this civil rights claim against various employees of the Arizona Department of Child Safety after the relationship between Ms. Ploof and her child was severed due to the unconstitutional actions of these employees. The Defendants moved to dismiss on statute of limitations grounds. The District Court granted the Defendants' motion and this appeal followed.

The statute of limitations is an affirmative defense. *Wyatt v. Terhune*, 315 F.3d 1108, 1117–18 (9th Cir. 2003), *overruled on other grounds*, *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014). "[Federal Rule of Civil Procedure] 8 does not require plaintiffs to plead around affirmative defenses." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019). Further, "[o]rdinarily, affirmative defenses ... may not be raised on a motion to dismiss." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018). In short:

> The defendant … bears the burden of proof as to each element of a statute of limitations based affirmative defense. *See Tovar v. U.S.P.S.*, 3 F.3d 1271, 1284 (9th Cir. 1993). Similarly, a plaintiff is not ordinarily required to plead around affirmative defenses. *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993).

*Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 913 (E.D. Cal. 2017).

Here, the Defendants moved to dismiss Plaintiff's civil rights claim on the *sole* ground that "[t]he latest actual date referenced in the Complaint is June 18, 2018," and therefore, "the statute of limitations for these claims expired on June 18,

2020." *Defendants' Motion to Dismiss*, **IR 8**, at 5; **ER 21**. Defendants made this contention despite the fact that it was self-evident from the Complaint that *numerous* relevant events occurred after June 18, 2020, including the severance of the relationship between Jessica Ploof and her son H.P. **IR 1,** at ¶¶ 250-51, **ER 54**. The State did not identify a specific accrual date or rule other than "the last date" referenced in a complaint.

Ms. Ploof had no obligation to "plead around" any potential statute of limitations affirmative defense. Picking a date from Ms. Ploof's complaint and asserting it is the "last date" alleged does not establish an appropriate accrual date for the complaint or that the key events giving rise to the claim did not occur after that date. The Defendants bore the burden of persuasion and proof in seeking to dismiss a complaint on statute of limitations grounds based solely on the allegations in Ms. Ploof's complaint, and they did not meet that burden here. Accordingly, Ms. Ploof respectfully requests that this Court reverse the district court's order dismissing the Complaint, and remand for further proceedings.

### Jurisdictional Statement

This is an appeal from the district court's December 9, 2021, order, dismissing Plaintiff's complaint. **IR 14, ER 3-16**.

The district court had federal question jurisdiction, following the Defendants' removal, pursuant to 28 U.S.C. § 1331. This Court has appellate jurisdiction to hear the appeal of the district court's order of dismissal pursuant to 28 U.S.C. § 1291.

Ploof filed a timely notice of appeal on January 7, 2022. **IR 16, ER 85-86.**

## Statement of Issues

Since the statute of limitations is an affirmative defense and a plaintiff has no obligation to plead around this defense, did the District Court err as a matter of law in dismissing Plaintiff's civil rights claims based solely on the "last date" alleged in the Complaint?

## Statement of the Case and Factual Background

### 1. Background

Plaintiff-Appellant Jessica Ploof is the mother of H.P., born in April of 2014. *Complaint*, **IR 1**, at ¶ 20, **ER 32**. Jessica was 20 years old at the time, and struggled with an intellectual disability. *Id.* at ¶¶ 21, 23. Jessica lived with her mother, Brendi Ploof, a certified nursing assistant. *Id.* at ¶¶ 27-29, **ER 33**.[1] Brendi co-parented with Jessica, ensuring that H.P.'s medical needs were appropriately met, among other things. *Id.* at ¶¶ 29, 39-40, **ER 33-34**.

H.P. was a medically challenged child. *Id.* at ¶¶34-35, **ER 33**. Jessica arranged services for H.P. through the Arizona Department of Developmental

---

[1] H.P.'s father has never been part of H.P.'s life. *Id.* at 24, **ER 32.**

3

Disabilities, including physical therapy, speech therapy, and attendance at a head start preschool. *Id*. at ¶¶ 37, 41 **ER 33-34**.

For the first four years of H.P.'s life, Jessica dutifully cared for H.P. None of the persons who regularly interacted with either or both of H.P. and Jessica, including doctors, teachers, and family members, saw anything amiss with either H.P. or Jessica. *Id*. at ¶¶ 44-58, **ER 34-35**.

In December of 2016, Jessica ended a toxic relationship with her boyfriend. *Id*. at ¶¶ 65-69, **ER 36**. The boyfriend threatened to call the Department of Child Safety and make allegations against Jessica. *Id*. at 70.

Soon thereafter, DCS received two anonymous tips regarding Jessica and H.P., alleging that Jessica was neglecting H.P. and that her home was unsafe. *Id*. at ¶ 73.

### 2.    DCS investigates the tips

Two DCS investigators, Meagan Tafoya and Ms. Baggen visited Jessica's home on December 21, 2016. *Id*. at ¶ 76, **ER 37**. Based on this visit, Tafoya reported that "[H.P.] was free from any visible injuries. He was dressed appropriately. The home was free from any safety hazards." *Id*. at ¶ 91, **ER 38**. Jessica did admit that she might test positive for marijuana, possibly another substance. *Id*. at ¶¶ 87, 89. The two DCS investigators determined that H.P. was fine to remain in the home in Jessica's care. *Id*. at ¶ 90.

Jessica's urine sample was positive for marijuana and alcohol, both legal substances. *Id.* at ¶ 94, **ER 38.** Her hair follicle did show traces of methamphetamine. *Id.* The Department conducted a team decision meeting on January 11, 2017. *Id*. at ¶ 95. The Department employees noted that H.P. was "healthy" with "stable housing," and that Jessica had strong family support. *Id*. at ¶¶ 98-99, **ER 39**. However, due to the positive drug test, the Department appointed Jessica's mother, Brendi, as a "safety monitor," and asked Jessica to conduct a drug risk assessment with TERROS. *Id*. at ¶¶ 100-01.

### 3.     DCS removes H.P. from Jessica

The next day, January 12, 2017, Brendi, a nursing assistant, was unexpectedly called into work. *Id*. at ¶ 105. Brendi alerted Defendant Tafoya of this development. *Id*. Nonetheless, although the only thing that had "changed" was Brendi having to work, Tafoya decided to remove H.P. from his mother. *Id*. at ¶ 106, **ER 39-40.** She did so with the approval of her supervisor, Defendant Sarah Greenway. Neither Tafoya nor Greenway sought any prior court authorization for the seizure. *Id*. at ¶¶ 114-15, **ER 40**.

After Tafoya and Greenway seized H.P. and removed him from Jessica, the Department assigned Defendant Paige Szymkowski as the Department's case manager, with Defendant Nick Breeding as her immediate supervisor. *Id*. at ¶ 123, **ER 42.**

At a post-deprivation dependency hearing to justify the pre-hearing seizure, Szymkowski testified falsely about both Jessica's and Brendi's cooperation with the Department. *Id.* at ¶¶ 125-27. Shortly thereafter, Ms. Szymkowski placed H.P. with an unrelated foster care family. *Id.* at ¶ 139, **ER 43**. Traumatized, H.P. began to hurt himself. *Id.* at ¶ 142, **ER 44**. The foster family could not continue to care for H.P., so the Department placed him with yet another unfamiliar foster family. *Id.* at ¶ 143.

### 4. Jessica participated in all services required by DCS

Jessica faithfully participated in the services provided to her by the Department. *Id.* at ¶ 152, **ER 44**. For the two years that the trial court process lasted, Jessica never again tested positive for any substances, legal or illegal. *Id.* at ¶ 166, **ER 46**. However, the Department failed to provide services that accommodated Jessica's intellectual disability. *Id.* at ¶ 153, **ER 45**.

Jessica was on track for H.P.'s return until a psychological evaluation with Defendant James Thal, Ph.D. Dr. Thal evaluated Jessica in July of 2017. *Id.* at ¶ 169, **ER 46.** Dr. Thal diagnosed Jessica with a mild mental deficiency. Dr. Thal recommended that Jessica co-parent with a "capable and fully functioning parental figure," which Thal testified, "[i]n my mind, the most obvious person in that role would have been maternal Grandmother [Brendi]." *Id.* at ¶¶ 174-75, **ER 47**.

Sometime following this report, the Department assigned Defendant Claudi Hoff to take over as DCS case manager for H.P.'s case. *Id.* at ¶ 192, **ER 48.** Szymkowski no longer had any professional connection to the case.

### 5. Defendant Thal's tainted evaluation and report of Brendi Ploof

However, before her connection to the case ended, Szymkowski commissioned Dr. Thal to conduct an evaluation of Brendi Ploof. *Id.* at ¶ 186, **ER 48.** Dr. Thal issued his evaluation of Brendi on January 18, 2018. *Id.* at ¶ 189. In this report, he again offered his professional opinion in favor of appointing Brendi as guardian and allow her and Jessica to co-parent H.P. *Id*. He provided a a positive evaluation of Brendi, noting that Brendi was "well-oriented," "neatly groomed," had an "appropriate" "thought process," and "her judgment seems to be good." *Id*. at ¶ 190. He stated:

> [Brendi] would appear to be a particularly suitable long-term placement for H.P., [and a] child in the sole care and custody of this grandparent would not appear to be at risk in any identifiable way provided she sets clear boundaries and reasonable expectations with the mother, Jessica Ploof.

*Id.* at ¶ 192.

When Dr. Thal issued his report, case manager Hoff had no issues or concerns with it or Dr. Thal's recommendations. *Id*. at ¶ 193.

However, Defendant Szymkowski, even though no longer attached to the case, took it upon herself to call Dr. Thal. *Id*. at ¶ 194 **ER 49**. When Szymkowski

contacted him, she "expressed" to him "her concerns" over the alleged "substandard condition of grandmother's residence" as well as her "concern" about H.P.'s alleged "very poor overall condition when he came into care." *Id*. at ¶ 195.

Szymkowski had a "a second major point" to raise with Dr. Thal. *Id.* at ¶ 219, **ER 51.** Szymkowski advised Dr. Thal that H.P. was "bonded" with his foster family, and that H.P.'s bond with his foster family was "critically important" to Dr. Thal's determination of whether Brendi could serve as a guardian and co-parent to her grandchild. *Id.* at ¶ 220.

. Szymkowski's claims had no factual basis and, in fact, were contrary to the reports of the initial investigating DCS employees. She was unable to provide any factual basis for her concerns to Dr. Thal. *Id.* at ¶ 222. Nonetheless, based solely on Szymkowski's communication, Dr. Thal changed his report. *Id*. Further, in a March 14, 2018, letter to case manager Hoff, Dr. Thal asked that his prior report be "shredded." *Id*. at ¶ 224.

Ultimately, Dr. Thal made numerous revisions to his report following the unsolicited and misleading call by Ms. Szymkowski, including:

| Original, Unaltered Report | Altered Report |
|---|---|
| Dr. Thal recommended that H.P. be placed with his family, with Jessica and Brendi acting as co-parents. | Dr. Thal had "alarming" concerns with H.P. being in Brendi's care. |
| No health concerns for H.P. noted. | Noted that H.P. was in "poor condition" and "grossly underdeveloped" when he came into care. |

| | |
|---|---|
| H.P.'s living conditions while in the home of Brendi are described in positive terms. | Brendi diagnosed with "[n]eglect by history." |
| No diagnosis for Brendi. | Brendi diagnosed with "[n]eglect by history." |
| No concern about Brendi's response to H.P.'s challenges expressed. | Expressed that Dr. Thal was "alarm[ed]" about Brendi's alleged lack of response to H.P.'s challenges. |
| Reached the expert conclusion that there "would not appear to be any risk" to H.P. under Brendi's care. | Reached the expert conclusion that "H.P. would be at risk for neglect and regression in his development if Brendi is not adequately attentive to her grandson's health and wellbeing." |

*Id*. at ¶ 243, **ER 52-53**.

In October 2018, Jessica completed a second psychological evaluation, again with Dr. Thal—the doctor who had earlier completely changed his report regarding Brendi Ploof based solely on the request of a former case manager on the case. *Id*. at ¶ 180, **ER 47**.[2]

Jessica completed every service requested of her by the Department, generally with favorable reports. She took even greater steps to improve her life. *Id.* at ¶ 245, **IR 54**. Nonetheless, the juvenile court permanently and irrevocably terminated the relationship between Jessica and H.P. *Id*. at ¶ 250.

> **6.  Jessica Ploof files a civil rights action against various employees or agents of the Arizona Department of Child Safety.**

---

[2]     October 2018 is, of course, a later date than June 18, 2018.

On December 23, 2020, Plaintiff filed a 14-count complaint against various employees and agents of the Arizona Department of Child Safety, including Meagan Tafoya, Sarah Greenway, Pagie Szymkowski, Claudia Hoff, Nick Breeding, Gregory McKay, Michael Faust, and Dr. James Thal. *See* **IR 1**, **ER 27-94.** Ms. Ploof alleged, among other things, various claims arising under the Civil Rights Act of 1871, 42 U.S.C. § 1983. *Id*. at ¶¶ 281-363, **ER 58-72.**

The State of Arizona moved to dismiss Ms. Ploof's complaint on May 21, 2021. **IR 8, ER 17-26**. With respect to Plaintiff's civil rights claims, the State argued:

> Plaintiff filed her complaint on December 23, 2020, alleging various section 1983 claims. However, all of the acts or omissions giving rise to Plaintiff's claims occurred more than two years before she filed this lawsuit. The latest actual date referenced in the Complaint is June 18, 2018 (Complaint ¶ 236). Accordingly, the statute of limitations for these claims expired on June 18, 2020. Plaintiff failed to file the Complaint until December 23, 2020, after the limitation period expired.

*Id*. at 5, **ER 21**. That was the complete essence of the State's argument.

Following response, **IR 9**, and reply, **IR 10**, but without oral argument, the District Court granted the State's motion, holding:

> In the absence of necessary specific facts to support a conclusion that Plaintiff was of unsound mind, the Court finds the limitations period for Plaintiff's section 1983 claims expired on June 18, 2020,3 over six months prior to the filing of the present lawsuit. Plaintiff's section 1983 claims numbered 2, 3, 4, 5, 6, 7, 8, 9, and 14 are thus time barred and are dismissed. (See Compl. ¶¶ 281-363.)

*Order Dismissing Complaint*, **IR 14**, at 8, **ER 10**.

This appeal follows. **IR 16, ER 85-86.**

## Summary of Argument

The defendant … bears the burden of proof as to each element of a statute of limitations based affirmative defense. *See Tovar v. U.S.P.S.*, 3 F.3d 1271, 1284 (9th Cir. 1993). Similarly, a plaintiff is not ordinarily required to plead around affirmative defenses. *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993).

*Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 913 (E.D. Cal. 2017). Here, the Defendants failed to satisfy their burden by simply pointing to the "last date" purportedly (and incorrectly) referenced in Plaintiff's complaint as the basis for dismissing on statute of limitations grounds.

## Discussion

**A.    The Defendant failed to prove that the affirmative defense of the statute of limitations applied from the face of Plaintiff's complaint.**

**1.    Standard of review**

This Court reviews a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) *de novo*. *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *Id*.

**2.    The statute of limitations for section 1983 actions, generally**

11

Plaintiff seeks reversal as to Counts 2, 4, 5, 6, 7, 8, and 9, her claims for relief arising under 42 U.S.C. § 1983. Plaintiff does not seek reversal as to the other dismissed counts.

Although Section 1983 provides a federal cause of action, courts look to the law of the state in which the cause of action arose to determine the length of the statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Under Arizona law, the applicable statute of limitations is Arizona's two-year statute for personal injury claims set forth in Arizona Revised Statutes section 12-542. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

> **3.    The statute of limitations is an affirmative defense, and a plaintiff has no obligation to plead facts relevant to this defense; only if the accrual date and untimeliness is *clear* from the face of the complaint may the complaint be dismissed on timeliness grounds.**

The State of Arizona argued, and the District Court agreed, that the statute of limitations could be established by the "latest date" alleged in Plaintiff's Complaint. But a plaintiff has no obligation to the plead facts relevant to the statute of limitations affirmative defense, and a case can be dismissed under Rule 12(b)(6) if, and only if, the lack of timeliness is clear from the face of the complaint. It was not in this matter and for this reason alone, this case should be remanded to the District Court.

A statute of limitations is an affirmative defense. *Wyatt v. Terhune*, 315 F.3d 1108, 1117–18 (9th Cir. 2003) ("yet it is well-settled that statutes of limitations are

12

affirmative defenses, not pleading requirements"), *overruled on other grounds*, *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014)). "[Federal Rule of Civil Procedure] 8 does not require plaintiffs to plead around affirmative defenses." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019). Further, "[o]rdinarily, affirmative defenses ... may not be raised on a motion to dismiss." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018); *see also Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) ("Ordinarily affirmative defenses may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact") (citing C. Wright & A. Miller, Federal Practice and Procedure, § 1277, at 328–30).

> The defendant, therefore, bears the burden of proof as to each element of a statute of limitations based affirmative defense. *See Tovar v. U.S.P.S.*, 3 F.3d 1271, 1284 (9th Cir. 1993). Similarly, a plaintiff is not ordinarily required to plead around affirmative defenses. *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993).

*Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 913 (E.D. Cal. 2017).

Further, the initial burden of persuasion was on the State as well. ("In every civil case, the defendant bears the burden of proof as to each element of an affirmative defense." *Tovar v. U.S.P.S.,* 3 F.3d 1271, 1284 (9th Cir. 1993). A "[d]efendant[] bear[s] the burden of persuasion on [a] motion to dismiss…. " *Lesher v. City of Anderson*, 221CV00386WBSDMC, 2021 WL 2682161, *slip op.* at 6 (E.D.

13

Cal. June 30, 2021); *see also Rabago v. Deutsche Bank Nat. Tr. Co.*, 5:10-CV-01917-JST, 2011 WL 2173811, *slip op.* at 2 (C.D. Cal. June 1, 2011).

In its Motion to Dismiss, the State devoted less than two pages to the statute of limitations issue, and its analysis consisted ***entirely*** of the following:

> Plaintiff filed her complaint on December 23, 2020, alleging various section 1983 claims. However, all of the acts or omissions giving rise to Plaintiff's claims occurred more than two years before she filed this lawsuit. The latest actual date referenced in the Complaint is June 18, 2018 (Complaint ¶ 236). Accordingly, the statute of limitations for these claims expired on June 18, 2020.

*State's Motion to Dismiss*, **IR 8**, at 5; **ER 21**. In short, the State did not identify a specific accrual date or rule other than "the last date" referenced in a complaint. That is the beginning and end of the State's analysis.

An accrual date is not based on the "last date" alleged in a complaint; rather "under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (quotation omitted). In Plaintiff's complaint, she alleged as follows with respect to the events of June 18, 2018:

> 235.  Over three days in 2018, Jessica completed a bonding/best interest assessment with Dr. Bennett.

> 236.  In his report of June 18, 2018, Dr. Bennett also concluded that Jessica has an intellectual disability.

> 237.  In his report, Dr. Bennett noted that H.P. was "relaxed," and "comfortable," with his mother and grandmother, and that it was obvious that the family was "enjoy[ing] each other's company."

238.   Dr. Bennett also noted how Jessica and Brendi worked as a team, stating that "records suggest that during the visits Brendi does some of the parenting. . . but there are also visits where Jessica does these same things."

239.   Dr. Bennett noted that appropriate verbal and physical affection came from both Jessica and Brendi, and that H.P. would seek out Brendi for comfort.

240.   In his report, Dr. Bennett opined that Brendi "likely has the ability to parent H.P."

241.   He observed that Jessica was implementing "some of what she learned through services." but expressed concern that "given Jessica's intellectual issues," it was unknown what parenting skills she could learn through the non-accommodating services DCS was offering.

*Plaintiff's Complaint*, **IR 1**, at ¶¶ 235-41, **ER 53-54**.  June 18, 2018, was the date of Dr. Bennett's best interest/bonding report. This will unquestionably be important evidence in Ms. Ploof's trial in this matter. But no one argues—Plaintiff or Defendants—that the receipt of this best interests/bonding report was the date that Ms. Ploof "kn[e]w[] or ha[d] reason to know of the injury that forms the basis of [her] cause of action." *Bradford v. Scherschligt*, 803 F.3d 382, 387 (9th Cir. 2015).

It is clear from Ms. Ploof's complaint that *many* things happened after June 18, 2018. In fact, the very next paragraph of Ms. Ploof's complaint alleges:

242.   *After* Dr. Bennett's evaluation, DCS was even more aware that, due to Jessica's intellectual disability, the services they were offering to her were unlikely to help her. Yet, DCS did nothing to offer services that were in any way accommodated to Jessica's disability.

*Plaintiff's Complaint*, **IR 1**, at 27-28, ¶ 242, **ER 52-53** (emphasis added).

Most significantly, it is clear that the critical harm in this matter, the severance of Ms. Ploof's relationship with H.P.—occurred more than two years beyond the arbitrary June 18, 2018, accrual date advanced by the Defendants. *See* **IR 1,** at ¶ 250, **ER 54**.

The opinion of the Arizona Court of Appeals in the underlying juvenile matter also describes the considerable activity in this case following June 18, 2018, including (1) a reassessment by Dr. James Thal in October of 2019; (2) the Department of Child Safety's motion to terminate Mother's relationship with H.P. in August of 2018; (3) another psychological examination by another psychologist in March and April of 2019; and (4) most importantly, the trial in the spring and summer of 2019, leading to the severance ruling. *See Jessica P. v. Dep't of Child Safety, H.P.*, 249 Ariz. 461, 467–68, ¶¶ 17-22 (App. 2020), *opinion vacated in part Jessica P. v. DCS/H.P.*, CV-20-0241-PR, 2020 WL 8766053 (Ariz. Dec. 15, 2020).[3]

---

[3]    Mother's position on remand will be that the appropriate accrual date is the date that the juvenile court granted the Department's severance motion. Mother will seek to amend the complaint to allege the following facts:

- The date of severance was August 2, 2019;

- That prior to the severance, Mother maintained a relationship with H.P. by regular visitation; and

- Prior to the severance, the Department's case plan was initially solely family reunification, and even following the Department's

The State of Arizona's motion was facially invalid. The State offered an accrual date based only the "last date alleged in the complaint" even though it is clear from both the Complaint and published decisions of the Arizona Court of Appeals (as well as information in the very files of the Department of Child Safety) that many, many things happened in the underlying case that were not alleged by date in the Complaint. And, the well-established rule in the Ninth Circuit is that plaintiff—including Ms. Ploof—had no obligation to plead facts regarding the statute of limitations affirmative defense.

Nonetheless, the District Court adopted the State's analysis. It stated:

> Defendants proffer that June 18, 2020 is the day that the statute of limitations expired because it is the "latest actual date referenced in the complaint." (Mot. at 5.) Plaintiff does not suggest any alternate date. The Court finds this proposed date supportable and correct based on the facts available on the face of the complaint.

*Order Granting Motion to Dismiss*, **IR 14**, at 8, n. 3, **ER 10**. But Plaintiff had no obligation to suggest an alternative date, nor to plead any additional time-related facts in the Complaint. June 18, 2020, was not, nor could not be the appropriate accrual date.

By insisting on an accrual date for Plaintiff's claims that was nonsensical and in conflict with well-established rules regarding a defendant's obligation with

---

motion to terminate, the case plan was ***jointly*** family reunification ***or*** severance

17

respect to the statue of limitations affirmative defense, and in conflict with Ms. Ploof's own pleading obligations, Defendant invited the District Court's incorrect ruling. Perhaps facts will ultimately support such an argument, although Ms. Ploof certainly believes to the contrary. Nonetheless, at present, the record does not support a statute of limitations defense. Ms. Ploof respectfully requests that this Court reverse the District Court's order dismissing the matter and remand for further proceedings.

## Conclusion

For the reasons set forth herein, Plaintiff-Appellant Jessica Ploof respectfully requests that this Court reverse the order dismissing her Complaint as to counts 2, 4, 5, 6, 7, 8, and 9, and to remand for further proceedings.

RESPECTFULLY SUBMITTED this 13th day of June, 2022.

**MILLS + WOODS LAW PLLC**

/s/ Thomas A. Connelly
Thomas A. Connelly

**GILLESPIE, SHIELDS, GOLDFARB &
TAYLOR**

/s/ DeeAn Gillespie Strub
DeeAn Gillespie Strub

*Attorneys for Plaintiff/Appellant*

18

## Certificate of Related Cases

Plaintiff-Appellant, pursuant to Ninth Circuit Rule 28-2.6, states that she is unaware of any cases related to this appeal.

DATED this 13th day of June, 2022.

MILLS + WOODS LAW PLLC

/s/ Thomas A. Connelly
Thomas A. Connelly

GILLESPIE, SHIELDS, GOLDFARB & TAYLOR

/s/ DeeAn Gillespie Strub
DeeAn Gillespie Strub

*Attorneys for Plaintiff/Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  __22-15061_____

I am the attorney or self-represented party.

**This brief contains  __4,408_____  words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X** ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  _s/ DeeAn Gillespie Strub_____  **Date**  __**June 12, 2022**_____
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                                      *Rev. 12/01/18*